## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ASHLEY BROOKE NEESE,** ) | |
| ) | |
| **314 Afton Meadow Road,** ) | **Case No.:** |
| **Vinton, Virginia 24179** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **JUSTICE,** ) | |
| ) | |
| Serve at:  **950 Pennsylvania Ave, N.W.,** ) | |
| **Washington, D.C. 20530** ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Ashley Neese ("Neese"), by and through undersigned counsel, brings this cause of action against Defendant, United States Department of Justice ("DOJ"), and numerous components within DOJ, to compel compliance with the Freedom of Information Act ("FOIA") and the Privacy Act of 1974 ("Privacy Act"), pursuant to 5 U.S.C. §§ 552 and 552a, respectively. Neese seeks injunctive, declaratory, and other appropriate relief as described herein against DOJ to remedy DOJ's willful and intentional violations of FOIA and the Privacy Act.

## JURISDICTION AND VENUE

1.   The Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2.   The Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act.  *See* 28 U.S.C. § 2201, *et seq.*

3.     Because various components of DOJ failed to produce responsive documents and materials in compliance with FOIA within thirty business days of Neese's original requests and within twenty business days of Neese's filed administrative appeals, Neese is deemed to have exhausted her administrative remedies and may now seek judicial review.   5 U.S.C. § 552(a)(6)(C)(i).

4.     Moreover, pursuant to 5 U.S.C. § 552a(g)(5) of the Privacy Act, this Court has jurisdiction to hear this matter.

5.     Venue is proper in this district pursuant to 5 U.S.C. § 522(a)(4)(B), 5 U.S.C. § 552a(g)(5), and 28 U.S.C. § 1391(e).

## PARTIES

6.     Neese is a former Assistant United States Attorney ("AUSA") for the Western District of Virginia having resigned as an AUSA from the United States Attorney's Office ("USAO-WDVA") effective June 29, 2018.  Neese was employed as an AUSA by the USAO-WDVA from on or about October 12, 2008 until on or about June 29, 2018, during which time her office was located in the Roanoke Office for the USAO-WDVA.  Neese is a "person" authorized to request records from a federal agency pursuant to FOIA.  5 U.S.C. § 551(2).  Moreover, Neese is an "individual" authorized to request "records" maintained by DOJ in a "system of records," including by components of DOJ, pursuant to the Privacy Act.  5 U.S.C. § 552a(a)(2)-(5).

7.     DOJ is a department of the Executive Branch of the United States of America pursuant to 5 U.S.C. § 101, and a federal agency within the meaning of 5 U.S.C. §§ 551(1), 552(f)(1), and 552a(a)(1), and 28 U.S.C. § 2671.  DOJ oversees the components of this agency from which Neese has sought records, including from USAO-WDVA, the Office of Professional Responsibility ("OPR"), the Executive Office for United States Attorneys ("EOUSA"), and the Office of

Information Policy ("OIP"), among other components. DOJ has offices throughout the United States and its headquarters is located at 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

### STATUTORY FRAMEWORK AND GOVERNMENT COMMENTARY

8.   FOIA promotes open government by providing every "person" with a right to request and receive federal agency records. 5 U.S.C. § 552(a)(3)(A). FOIA reflects a "profound national commitment to ensuring an Open Government," and as a result, federal agencies are to "adopt a presumption in favor of disclosure." *Presidential Memorandum for Heads of Executive Departments and Agencies Concerning the Freedom of Information Act*, 74 Fed. Reg. 4683 (Jan. 21, 2009); *see also, Judicial Watch, Inc. v. Dep't of State*, Civil Case No. 14-1242, Judge Lamberth Memorandum Opinion, Doc. 54 (D.C. Cir. December 6, 2018). Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).

9.   In furtherance of its purpose to encourage open government, FOIA imposes statutory deadlines on agencies to provide responsive documents to FOIA requests. 5 U.S.C. § 552(a)(6)(A). DOJ and its components have failed to adopt a presumption in favor of disclosure in this matter.

10.   An agency must comply with a FOIA request by issuing a determination within twenty business days after receipt of the request. 5 U.S.C. § 552(a)(6)(A)(i). Moreover, an agency must immediately notify the requester of its determination whether to comply with a request, and the reasons for it, and of the right of such person to appeal an adverse determination. 5 U.S.C. § 552(a)(6)(A)(i). DOJ and its components have failed to comply with the statutorily imposed deadlines in this matter.

11.   The determination "must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013).

12.   An agency may be entitled to one ten-day extension of time to respond to a request if it provides written notice to the requester explaining "unusual circumstances" exist that warrant additional time.  5 U.S.C. § 552(a)(6)(B).  However, if the twenty-day time limit cannot be met by the agency, and the agency claims "unusual circumstances," the agency must notify the requestor and provide the date by which the agency estimates processing will be completed.  5 U.S.C. § 552(a)(6)(B).  Additionally, "[u]pon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request."  5 U.S.C. § 552(a)(6)(C)(i).

13.   Further, an agency shall make available a FOIA public liaison to aid the requester to resolve any disputes between the requester and agency, and notify the requester of the right of the requester to seek dispute resolution services from the Office of Government Information Services. 5 U.S.C. § 552(a)(6)(B)(ii).

14.   An agency's failure to comply with any timing requirements is deemed constructive denial and satisfies the requester's requirement to exhaust administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i).

15.   A FOIA requester who exhausts administrative remedies may petition the court for injunctive, declaratory, and other relief from the agency's continued withholding of records.  5 U.S.C. § 552(a)(4)(B).

16.   Pursuant to the Privacy Act, an "individual" may request "records" that are maintained in a "system of records" under the control of any agency, including DOJ.  5 U.S.C. § 552a(a).

17.   Moreover, an individual is entitled to "gain access to his [or her] record or to any information pertaining to him [or her] which is contained in the system, permit him [or her] and upon his [or her] request, a person of his [or her] own choosing to accompany him [or her], to review the record and have a copy made of all or any portion thereof in a form comprehensible to him [or her], except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence[.]"  5 U.S.C. § 552a(d)(1).

18.   It is the responsibility of the agency, and its components, to collect and maintain records, and to release records to individuals who request their release in compliance with the Privacy Act, unless an exemption is applicable.  5 U.S.C. § 552a(b)-(f) and (j)-(k).

19.   In accordance with the Privacy Act, "[w]henever an agency (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or (D) fails to comply with any other provision of this section (including failure to provide the materials requested by the individual), or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency[.]"  5 U.S.C. § 552a(g)(1)(C)-(D).

## FACTUAL BACKGROUND

20.   On May 3, 2018, while employed as an Assistant United States Attorney, members of management at the USAO-WDVA, including the United States Attorney, informed Neese of vague allegations that had been made against her which were brought to USAO-WDVA management by attorneys, Paul Beers and Emma Kozlowski, on or about the same date.   Amongst the vague allegations, Neese was informed that the USAO-WDVA had received and/or were to receive purported text messages and other forms of written communications, along with a statement made by an individual about Neese.   Neese requested access to the materials on that date from members of USAO-WDVA management to know and understand the actual allegations made against her. However, the USAO-WDVA management declined to provide access to the materials which they had in their possession at the time.   The only information provided to Neese on that date were vague statements made by the United States Attorney.

21.   After being informed of the vague allegations, Neese was placed on administrative leave on that same day by the USAO-WDVA, after the USAO-WDVA had consulted with EOUSA, General Counsel's Office.   Significantly, Neese was not provided with any written notice in advance of being placed on administrative leave.   Moreover, Neese was not provided with any of her due process rights to which she was entitled as a federal government employee who was not on any probationary status pursuant to 5 U.S.C. § 7503.[1]

---

[1] In fact, during the remainder of her employment with the USAO-WDVA, Neese was never provided with written notice of the allegations against her or any of her other statutorily entitled rights.   To date, she has never been provided with those rights, including the actual allegations against her, a chance to respond to the allegations and/or to appeal any determination.

22. On May 6, 2018, Neese's attorney requested in writing the materials provided to the USAO-WDVA with respect to the allegations made against Neese from a member of management at the USAO-WDVA. *See Exhibit 1*.

23. Then, on or about May 8, 2018, counsel for Neese requested the materials provided by the USAO-WDVA to OPR. However, OPR responded that OPR would not yet provide those materials. Counsel for Neese then informed OPR that he planned to ask the USAO-WDVA for a copy of the materials and OPR's contact advised that OPR did not object to Neese's attorney's request to the USAO-WDVA. Following the conversation with OPR, on that same date, counsel for Neese again requested the materials from the USAO-WDVA. *See id*. In a written response, the United States Attorney responded to counsel for Neese at 7:49 p.m., and stated, "David: Thanks for the email. We are considering your request – with input from EOUSA – and hopefully will be able to respond tomorrow. Have a good evening. Thomas" *Id*.

24. By email on May 9, 2018, a member of USAO-WDVA management informed Neese's attorney, in pertinent part, "[f]inally, we are still reviewing your request for a copy of the materials provided . . . I'll provide you with a response as soon as I'm able. Thank you for your patience."

25. Neese reported back to work to the USAO-WDVA for a short period of time; however, as a result of how she was treated based on mere allegations about her along with the failures of DOJ to provide any information to her as had been requested by both she and her counsel, Neese resigned from the USAO-WDVA effective June 29, 2018. The materials were never provided to Neese prior to her resignation from the USAO-WDVA. In an effort to have the USAO-WDVA preserve relevant materials, on June 27, 2018, counsel for Neese sent an email to a member of management at the USAO-WDVA. In relevant part, the email states,

"Rick: As you know, I represent Ashley Neese. Ashley has resigned her position as an AUSA, effective, June 29, 2018, and will pursue other opportunities. Certainly a factor in her decision to leave has been the latest actions by Paul Beers, and the DOJ's response/nonresponse to his actions, including, but not limited to, the failure to provide Ashley and me with any meaningful information and/or to engage in any meaningful discussion about the allegations, and whether I may have useful information regarding this matter . . . We have, of course, not had access to any information that DOJ has received and thus have not had any opportunity yet to respond. It is unclear exactly how Ashley's leaving will impact our abilities in that regard. Out of an abundance of caution, I write to request that the USAO and DOJ preserve all relevant information that may be useful to Ashley in responding, and in related matters. This includes, but is not limited to, any and all information submitted by Mr. Beers, any emails or phone messages from Mr. Beers, any notes taken of conversations with Mr. Beers, any related text messages, any investigative materials gathered concerning the allegations by Mr. Beers, including, but not limited to, any notes of any interviews with witnesses or third parties. In addition, please preserve Ashley's Outlook Calendar and documents, notes, and emails related to Operation Pain Train, . . . Thank you for your courtesies in this matter. If you have any questions, please let me know. Regards. David."

26.  Again, following the email of June 27, 2018, the USAO-WDVA failed to provide responsive materials to Neese.

27.  Neese's last date of employment with the USAO-WDVA was on June 29, 2018.

28.  On July 20, 2018, Neese submitted *via* email detailed formal FOIA and Privacy Act requests to the USAO-WDVA and to OPR, both of which are DOJ components. *See Exhibits 2 and 3*.

29.  The USAO-WDVA confirmed receipt of Neese's submission on July 20, 2018 *via* email. *See Exhibit 4*.

30.  By letter dated July 24, 2018, OPR confirmed receipt of Neese's FOIA and Privacy Act submission made on July 20, 2018. *See Exhibit 5*. OPR provided Neese with the number

assigned to her request:  OPR FOIA No. F18-00140.  *Id*.  Additionally, OPR advised Neese that it needed "a written authorization signed by Ms. Neese, permitting the disclosure to you (David Barger) of records pertaining to her.  This verification is required in order to protect Ms. Neese's privacy and to ensure that private information about her is not disclosed inappropriately."  *Id*.

31.   In response to OPR's letter dated July 24, 2018, Neese completed and submitted a Certification of Identity form to OPR on July 25, 2018.  *See Exhibit 6*.

32.   On July 30, 2018, EOUSA sent two emails confirming tracking number: EOUSA-2018-004905 had been assigned to Neese's request and described the date submitted as being July 27, 2018, rather than July 20, 2018, the date Neese's FOIA and Privacy Act request was actually submitted to the USAO-WDVA.  *See Exhibits 7 and 8*.

33.   According to FOIAonline.gov, Neese's FOIA and Privacy Act request had an estimated completion date described as September 10, 2018.  However, that deadline was not met. In fact, to date, OPR has failed to provide any responsive material to Neese pursuant to her FOIA and Privacy Act requests.  EOUSA has simply provided limited, non-pertinent material requested by Neese (as described more fully below).  Moreover, as of April 15, 2019, FOIAonline.gov continues to list the estimated date of completion as being September 10, 2018, and further, it still lists request number EOUSA-2018-004905 as being in the "processing" phase, even though, as stated above, Neese has only received limited records in accordance with her request of July 20, 2018, and those records received are not the most pertinent records she requested.  *See Exhibit 9*.

34.   Regarding OPR FOIA No. F18-00140, the assigned OPR contact did not respond further after submitting the July 24, 2018 letter to Neese.  On September 10, 2018, Neese's attorney sent an email to the assigned OPR contact requesting a status update regarding Neese's FOIA and Privacy Act request submitted on July 20, 2018.  *See Exhibit 10*.  In response, the OPR contact

sent a letter dated September 10, 2018, in which it stated, "a search of OPR's system of records was conducted and records which may be responsive to your request were located." *See Exhibit 11*.  Additionally, the letter set forth that OPR had deemed Neese's request to be an "unusual circumstances" request and that it had been placed on the "complex track*." Id*.  Significantly, the letter further states, "[b]ecause of these unusual circumstances, OPR is extending the time limit to respond to your request beyond the ten additional days provided by the statute." *Id*.   The letter also advised that Neese "may" want to "narrow" the scope of her request, that a FOIA Public Liaison was available to discuss reformulation or an alternative time frame for the processing of Neese's request, and that Neese could contact the Office of Government Information Services to inquire about mediation services.  *Id*.  However, importantly, the letter did not provide a date or time by which Neese's request would be processed.  *See id*.

35.  On September 11, 2018, counsel for Neese responded to the assigned OPR contact by letter.  *See Exhibit 12*.  The letter set forth that OPR had failed to produce any information to date and that the requests were for existing documents that did not appear to be "unusual" or "complex" in nature.  Moreover, the letter set forth Neese's specific request for "the date by which we will receive the documents," and it pointed out that the statutory time line had clearly passed by without any response from OPR.  *Id*.  Finally, in the letter, Neese's attorney set forth that Neese did not want to "narrow" her search because the "information is very important to my client at a number of different levels, and absent some specific offer from OPR FOIA, and the reasons therefore, on how to narrow the request, we must respectfully decline to do so.  Ms. Neese is clearly entitled to this information, as no exceptions are applicable herein.  Additionally, in light of the United States Court of Appeals for the District of Columbia's recent decision in *Bartko v. United States*, dated

August 3, 2018, we anticipate receiving this material from OPR and other [components] of the Department of Justice pursuant to our requests made on July 20, 2018." *Id.*

36.  OPR's assigned contact failed to respond to the letter submitted by counsel for Neese on September 11, 2018.  Thus, on September 21, 2018, Neese's attorney re-submitted the September 11, 2018 letter to OPR's contact.  Again, no response was received.  On September 30, 2018, counsel for Neese once again reached out to OPR's contact.  Finally, on October 3, 2018, OPR's contact responded by resending the letter from OPR dated September 10, 2018, but she again failed to provide a date by which materials were to be produced to Neese.  Neese's attorney responded to OPR's contact on the same date and asked when Neese could expect a substantive response, or at least, an initial production of materials.  OPR's contact again failed to respond.  On October 16, 2018, Neese's attorney reached out to OPR's contact once again to request a time Neese should expect production of the responsive materials.  In response, on October 17, 2018, OPR's contact stated that OPR had extended the 10-day time frame in which to respond, but she did not provide a date by which Neese would receive a response and production of materials from OPR.  Thus, Neese's attorney again responded to OPR's contact and stated that the information requested appeared to be quite easy to produce, especially given the specifics of the information requested and given Neese's knowledge that multiple components had access to certain pertinent requested information.  In the same email, it was also noted that OPR's failure to respond was clearly a statutory violation.  OPR's contact never responded to this email.

37.  On October 31, 2018, after OPR's contact failed to respond to the October 17, 2018 email and failed to provide a date by which materials would be produced to Neese, counsel for Neese then contacted the assigned OPR FOIA Liaison and left a voicemail for her.  The OPR FOIA Liaison never returned the phone call.  Thus, on November 8, 2018, counsel for Neese again

emailed OPR's assigned contact regarding Neese's request.  *See Exhibit 13*.  To date, OPR's

contact has failed to respond to either the October 17, 2018 email or the November 8, 2018 email.

Moreover, on November 12, 2018, Neese's attorney emailed OPR FOIA's Liaison.  To date, OPR

FOIA's Liaison has failed to respond to either the voicemail left on October 31, 2018 or the email

to her account on November 12, 2018, and she has failed to provide any responsive materials or a

date by which materials will be produced to Neese.  *See Exhibit 14*.  As of the date of this filing,

OPR has failed to ever provide any material in response to Neese's FOIA and Privacy Act requests,

with the first such request being made to OPR in a phone call on or about May 8, 2018, and the

formal request being submitted on July 20, 2018.

38.  EOUSA and the USAO-WDVA also failed to provide any records by September 10,

2018, as FOIAonline.gov listed that date as being the estimated date of completion.  *See Exhibit

9*.  On September 11, 2018, Neese's attorney also reached out to EOUSA to request a status update

regarding request number EOUSA-2018-004905.  On September 14, 2018, EOUSA's assigned

contact for Neese's request engaged in a telephone conversation with counsel for Neese.  During

the telephone call, Neese's attorney informed EOUSA's assigned contact that Neese would accept

rolling production of materials.  At that time, EOUSA's contact stated that she expected the first-

round production to be processed and produced to Neese in a couple of weeks.

39.  By the end of September 2018, Neese did not receive any responsive materials from

either OPR or EOUSA.  Thus, on September 30, 2018, Neese's attorney submitted a letter to

EOUSA's assigned contact for Neese's FOIA and Privacy Act request.  *See Exhibit 15*.  As part

of the letter, counsel for Neese pointed out the four basic objectives behind the Privacy Act.

Notably, one of those objectives is "to grant individuals increased rights of access to agency

records maintained on themselves."  Also, in this letter, Neese's counsel informed the EOUSA

contact that Neese would "gladly accept rolling production of records and information requested, as this information is important [to Neese.]" *Id*.

40.   Following numerous email communications, on October 29, 2018, the EOUSA assigned contact engaged in a telephone conversation with Neese's attorney.   During the conversation, Neese's attorney learned:  1) EOUSA did not produce documents on October 26, 2018, because the materials had to be reviewed before disclosure; 2) EOUSA would be producing the first round production on that date; 3) EOUSA had allegedly not received much of the information Neese had directly requested from USAO-WDVA (namely, the information provided to the USAO-WDVA by attorneys, Paul Beers and Emma Kozlowski, including, but not limited to, the statement Neese had been told was made about her, and any and all communications between Paul Beers, Emma Kozlowski, and any employee of DOJ); 4) OPR and EOUSA were not coordinating production of materials together but rather, the requests were being treated separately (even though both components advised that they had to consult with and work with other DOJ components in order to respond to Neese's requests and that the consultations were what made Neese's requests "unusual"); and 5) the USAO-WDVA had only provided EOUSA with materials pertaining to Neese's personnel file and the discovery from the underlying relevant criminal cases on which she had worked (apparently).

41.   Later on October 29, 2018, counsel for Neese received a letter from EOUSA, along with what appeared to be a first-round production of materials from EOUSA. *See Exhibit 16*.  The letter set forth that the production was the "first interim response" from EOUSA. *Id*.   The letter further informed Neese that EOUSA only produced 306 pages in full.  Additionally, EOUSA released 23 pages in part and EOUSA withheld disclosure of 208 pages.  EOUSA's letter only

advised Neese that those pages were withheld under exemptions (b)(5), (b)(6), and (b)(7),[2] without any further explanation.  Significantly, the letter states, "our office located records that originated with another government component.  These records were referred to the following component(s) listed for review and direct response to you:  DOJ, Office of Information Policy and DOJ, Office of Professional Responsibility."  However, the letter did not explain what those "records" were or what the records relate to, and since October 29, 2018, both OIP and OPR have failed to provide any responsive information and/or material to Neese.  The letter from EOUSA also states, "[t]his is a final determination as to your request for third party records."[3]  It further provides that the appellate period is 90 days.  The letter was signed by the Assistant Director.  Importantly, none of the material produced appear to be of significance with respect to the information Neese requested concerning the allegations made about her on or about May 3, 2018.

42.   After learning of information from conversation with the EOUSA assigned contact, on October 29, 2018, Neese's attorney called the AUSA in the USAO-WDVA which Neese's attorney was advised was handling Neese's FOIA and Privacy Act requests.  First, counsel for Neese called the AUSA and left her a voicemail.  Since no return phone call was made, on October 30, 2018, Neese's attorney emailed the AUSA requesting answers as to why certain specific requested

---

[2] It should be noted that these exemptions, as the letter's attachment shows, are made pursuant to FOIA and not the Privacy Act.  This matter is concerning because even as DOJ-OIP's website sets forth, in pertinent part, "If . . . any or all of the requested material is to be denied, it must be considered under the substantive provisions of both acts.  The withholding must be justified by the assertion of a legal applicable exemption in each Act.  The fact that a record is exempt under one of the two acts is not determinative; if it is not exempt under the other, it must be released to the first [party]."
[3] EOUSA's letter of October 29, 2018 states that Neese's request was a third-party request. Neese respectfully submits that her request was not a third-party request but rather, Neese's request was mainly a first-party request, with certain lesser pertinent parts of the request being deemed to be a third-party request.

material had apparently not been provided to EOUSA for production to Neese in compliance with FOIA and the Privacy Act. *See Exhibit 17*.

43. The USAO-WDVA AUSA assigned to the matter did not respond to the email dated October 30, 2018. Rather, the EOUSA contact followed up on the email Neese's attorney submitted to the USAO-WDVA AUSA. *See Exhibit 18*. Counsel for Neese and the EOUSA assigned contact exchanged emails. Importantly, in an email dated November 2, 2018, at 12:04 p.m., in response to why records were withheld from production to Neese, the EOUSA contact stated, "I can only tell you that the records were withheld pursuant to b6 (privacy) and b5 attorney/client privileges, *among other things*." *Id*. (emphasis added). On November 12, 2018, counsel for Neese sent another email to the EOUSA assigned contact requesting an update as to when Neese would expect to receive another production of documents. *See Exhibit 19*. The EOUSA assigned contact never responded to the email of November 12, 2018.

44. Subsequently, after continually being ignored by both OPR and EOUSA/USAO-WDVA, on December 7, 2018, more than seven months after Neese first made requests for materials in May 2018, and more than four months after submitting formal FOIA and Privacy Act requests, Neese's attorney submitted letters to the Office of Information Policy ("OIP") and the Office of Privacy and Civil Liberties ("OPCL") which Neese's attorney designated as administrative appeals based on the failures of OPR and EOUSA/USAO-WDVA to comply with FOIA and the Privacy Act by withholding information to which Neese is rightfully entitled under the statutes. *See Exhibits 20 and 21*. The appeals requested that OIP and OPCL compel the production of the responsive information from various components of DOJ.

45.   OIP acknowledged receipt of Neese's administrative appeal via email on December 14, 2018.  *See Exhibit 22*.  OIP assigned two appellate numbers to Neese's appeals: 1)  DOJ-AP-2019-001474 and; 2) DOJ-AP-2019-001476.

46.   On December 28, 2018, Neese's attorney submitted supplemental information to OIP and OCPL *via* email pertaining to her FOIA and Privacy Act administrative appeals.  *See Exhibits 23 and 24*.

47.   Neese acknowledges that various federal agencies were partially shutdown from December 22, 2018 until on or about January 25, 2019.  However, at the time the government was partially shutdown, Neese had made multiple requests from numerous components of DOJ for responsive material for at least seven months as described herein.   Thus, the various DOJ components had already violated the statutory time frame by the time the government partially shut down.  Moreover, during the partial government shutdown, Neese's attorney continued to request the pertinent material by contacting OIP.  *See Exhibit 25*.

48.   Following the partial government shutdown, counsel for Neese received a letter from OPCL dated January 28, 2019, informing Neese that OIP handles administrative appeals with respect to Neese's requests.  *See Exhibit 26*.  On February 4, 2019, counsel for Neese again contacted OIP regarding the status of Neese's administrative appeals*.  See Exhibit 27*.  In response, on February 5, 2019, OIP's assigned contact informed Neese's attorney, *via* email, that OIP "work[s] on appeals on a first-in, first-out basis and will adjudicate your client's appeals as soon as possible.  However, it will likely be at least another month before we are able to complete the review of your client's two appeals." *See Exhibit 28*.  To date, it has been more than two months since receipt of this email and no records have been produced by OIP.  Moreover, OIP has failed to provide any date certain by which materials will be processed and produced to Neese.  The

continual violations of FOIA and the Privacy Act, by multiple DOJ components, have caused

Neese to have to file this lawsuit in order to obtain the pertinent material requested.

49.   On February 13, 2019, OIP issued a letter to Neese's attorney; however, this letter

provided a different reference number for Neese's administrative appeals (DOJ-2019-000550).

*See Exhibit 29*.  In this letter, OIP admitted that it had received approximately forty (40) pages of

material which EOUSA had located and sent to OIP for processing and direct release to Neese.

Also, OIP admitted it had received the material from EOUSA on October 30, 2018, well before

Neese filed her administrative appeal with OIP on December 7, 2018.  *Id*.   OIP also stated, "[t]o

the extent that the referred material contains information of interest to other components or

agencies we can respond only after consulting with those entities regarding their information."  *Id*.

Given this statement and the statement that OIP had received the material on October 30, 2018, it

appears OIP failed to consult with other entities regarding the forty pages of information between

at least October 30, 2018 and February 13, 2019.

50.   On February 22, 2019, Neese's attorney emailed the assigned OIP contact regarding

the status of Neese's appeals.  *See Exhibit 30*.  In response, on February 26, 2019, the assigned

OIP contact sent an email stating, "[b]oth appeals are still pending and we are working diligently

to handle them as quickly as possible.  Requests and appeals are handled on a first-in, first-out

basis.  I would anticipate a response from our office on Appeal No. DOJ-AP-2019-001476 in the

next three or four weeks.  For the other appeal, DOJ-AP-2019-001474, I would anticipate a

response from our office in the next three or four months."  *Id*.  Then, on March 1, 2019, counsel

for Neese responded,

> "Daniel, Thank you for your email.  The response causes me
> concern because it does not address why the material has not been
> produced to date even though we have repeatedly requested it for
> almost 10 months now – since May 3, 2018.  The extended delay is

particularly disappointing since we now know that OIP has had at
least some of the requested material since October 30,
2018. Moreover, I am somewhat confused as to the time-frames
you set forth in your email.  As you're aware, we submitted formal
FOIA/Privacy Act requests to OPR and the USAO/EOUSA on the
same day - July 20, 2018.  In those requests, we asked for the same
information - essentially, any and all material from any and all
DOJ components.  Now, I do not understand why one appeal is
estimated to be completed in three to four weeks and the other
appeal will not be completed for three to four months, especially
when the latter time frame concerns EOUSA material which it has
had since early May, 2018 and some of which OIP has had since
October 2018.  Respectfully, that does not make sense, and it
prejudices my client with respect to any potential causes of action
she may have.  With regard to your statement pertaining to matters
being taken on a first-in, first-out basis, this causes more
questions.  We have been asking for the responsive materials from
DOJ components since May 2018 without a sufficient response or
a sufficient production.  Quite frankly, the question becomes
whether the statutory time periods are ever complied with, given
your statement about a first-in, first-out analysis/review.  If we
must file a lawsuit in order to obtain this information we will do
so; however, it seems simple - my client is entitled to this
information under the Privacy Act and FOIA and it should be
provided without us having to file a lawsuit because DOJ will not
comply with the statutorily required provisions.  Moreover, I am
always willing to accept rolling production.  I have advised OPR-
FOIA and EOUSA-FOIA of this same information previously, on a
number of occasions; however, regardless of who I advise in DOJ,
I have yet to have success in obtaining this pertinent
material.  Please advise why it will take two different time periods
to complete requests for the same information and whether you
will provide rolling production.  I am happy to discuss this with
you either by phone or in person if you would like.
Regards.  David."

*Id.*  The assigned OIP contact never responded to Neese's attorney.  Moreover, on March 23, 2019,

Neese's attorney again reached out to the assigned OIP contact and set forth, "Dan, I am following

up on my emails to you of February 22 and March 1 to see if you can provide me an update on the

production of documents from our appeals.  On February 5, 2019, you advised that it would be at

least a month, and on February 26 you advised that it would be 3-4 weeks for one of the appeals

and 3-4 months for the other.  As I have advised a number of govt components, the delays continue

to prejudice my client and the failures by the components to produce documents are clear statutory

violations.  Please let me know when we can expect at least the first production.  As I have stated

to numerous others in the past, we will also take rolling production.  Thank you.  David.  As

always, I am happy to talk about the matter." *See Exhibit 31*.  As of the date of this filing, the

assigned OIP contact has failed to respond to the most recent emails sent by Neese's counsel, has

failed to produce any materials to Neese, has failed to provide a date certain by which materials

will be produced to Neese, and has not been in contact with Neese's counsel about Neese's

administrative appeals since February 26, 2019.

51.    To date, OIP has not provided any materials in response to Neese's administrative

appeals.  According to FOIAonline.gov, the estimated date of completion for the appeals was

January 11, 2019. *See Exhibits 32 and 33*.  Further, it has now been more than three months since

January 11, 2019, and no materials have been produced by OIP, including the materials it has

maintained in its custody and control since at least October 30, 2018.

52.    On March 1, 2019, Neese's attorney reached out to the Deputy General Counsel at

EOUSA regarding several matters.  In pertinent part, the email sent to the Deputy General Counsel

stated,

> "[f]inally, I am unsure if you're the right person to discuss this
> matter with, but since you are the Deputy General Counsel and
> seem to be apprised of the matters ongoing, will you please help
> provide me with some guidance as to why we are not receiving the
> materials and information we have been requesting from the
> Department of Justice for more than 9 months?  That material, as
> I'm sure you are aware, is extremely important to Ashley.  It will
> allow her:  1) to assess why she was not provided with her due
> process rights to which she was entitled as a federal employee,
> who was not on probation, as promulgated under 5 U.S.C. §§ 7503
> and 7513, and what potential causes of action she may have; and 2)
> to determine whether she has a potential cause of action for

defamation and/or intentional infliction of emotional distress, among others, against one or more complainants to the USAO. Our repeated requests for this material under the Privacy Act and FOIA to numerous components of DOJ, along with the repeated excuses and/or refusals by these components to provide the material we know exists, appears to leave us with no other option but to file suit for this material and information.  Honestly, it does not make sense why this information has been withheld, especially in light of our submissions to OPR on October 22, 2018, November 12, 2018, and November 21, 2018.  I bring these matters to your attention because you, as Deputy General Counsel, are hopefully in a position to do justice and help her obtain this information in a manner that would alleviate any need for litigation and our request for attorney's fees in that lawsuit.  You should be aware that Ashley has heard many interesting rumblings regarding this matter.  One of the matters that was brought to her attention was that when asked, a member of management informed another now-former employee of USAO-WDVA that General Counsel's Office was the reason why the materials and information had not been provided to Ashley.  Now, we do not know if that is factually accurate; however, it does seem very strange to us that we have been requesting this material and information since . . . May 3, 2018, to no avail.  Any help or guidance you can provide to us will be much appreciated.  Thank you for your time and attention to this matter.  I would, of course, be happy to discuss these matters with you, or the relevant persons, either in person or by phone if that would be helpful."

53.  During a discussion with Deputy General Counsel at EOUSA, counsel for Neese was informed to reach out to a particular contact (the Assistant Director who signed the letter from EOUSA on October 29, 2018) at EOUSA to see if that contact could provide responsive materials. On March 12, 2019, Neese's counsel emailed the Assistant Director at EOUSA regarding Neese's FOIA and Privacy Act requests.  *See Exhibit 34*.  On March 14, 2019, the Assistant Director responded *via* email and stated, "Mr. Barger, I checked on the status of your FOIA request and the District is still searching through responsive records.  The government shutdown has unfortunately added to the delay in this process for you and thousands of other requesters.  I have asked the District to give me an estimate of completion by today.  That being said, the records will still need

to be processed in my office.  Ms. Stone who processed the partial release is no longer with EOUSA, so I will be assigning these records to a new attorney.  When we receive the records we should be able to give you an estimated time of completion.  In regards to your appeal, you need to contact the Office of Information Policy.  I will send you a note when I get word from the District." *Id*.  In a clarification email, the Assistant Director stated that the "District" was the USAO-WDVA. *Id*.  Neese's attorney again reached out to the Assistant Director on March 23, 2019. *Id*.  In response, the EOUSA contact stated, "David, Thank you for your patience.  As you know, [the EOUSA contact] no longer works for DOJ, so I have assigned the case to a new attorney that will be contacting the District to get this ball moving.  The response I got from the District is that they still have a conference room of records to review for documents that may be responsive.  Once we get a determination on the amount of records, we will be able to give you an accurate estimate of completion." Id.  Counsel for Neese then responded, "[Assistant Director], thanks for the email.  I understand what they are saying, but there are certain key documents we have specified for months relating to documents provided by and statements made by Paul Beers in early May 2018, (which I know they reviewed at the time and which they forwarded to OPR and EOUSA).  Their delay does not make the District look good.  In any event we look forward to a production as soon as possible.  As I have mentioned, we have always been willing to have a rolling production.  Thank you.  David." *Id*.  As of the date of this filing, Neese's attorney has not received a response and/or heard back from the EOUSA contact.  Moreover, the specific responsive materials pertinent to Neese, and potential causes of action she may have, have still not been provided to Neese.

54.  DOJ and its components have willfully and intentionally withheld certain pertinent requested materials from Neese for more than eleven months as of the date of this filing.  Based

on DOJ's egregious conduct and due to DOJ's failures to comply with FOIA and the Privacy Act, Neese apparently has been left with no other choice to obtain the information which she is rightfully entitled to under the law but to file this civil complaint with the Court and thus, she has been required to expend resources to prosecute this action by having to ask this Court to compel DOJ, and its components, to search for and to produce the requested materials in compliance with the law.

## CAUSES OF ACTION

## COUNT ONE

## (Failure to Conduct Adequate FOIA Search)

55.   Neese re-alleges and incorporates by reference the allegations made in all preceding paragraphs of this Complaint.

56.   Neese has a statutory right to have DOJ process its FOIA requests in a manner that complies with FOIA.  5 U.S.C. § 552(a)(3).  DOJ violated Neese's rights in this regard when it unlawfully failed to undertake a search that is reasonably calculated to locate all records that are responsive to Neese's numerous requests for responsive material since May 3, 2018.

57.   Due to DOJ's misconduct,[4] unless enjoined and made subject to a declaration of Neese's legal rights by this Court, DOJ will continue to willfully and intentionally withhold the responsive materials and will continue to violate Neese's rights to receive the responsive records under FOIA.  Neese is entitled to injunctive relief with respect to the release and disclosure of the requested materials.

---

[4] For an example of outrageous misconduct by the government see *Judicial Watch, Inc., v. Dep't of State*, Civil Case No. 14-1242, Judge Lamberth Memorandum Opinion, Doc. 54 (D.C. Cir. December 6, 2018), *citing Judicial Watch, Inc. v. Dep't of Commerce*, 34 F. Supp. 2d 28, 41 (D.D.C. 1998); *DiBacco v. U.S. Army*, 795 F.3d 178, 192-93 (D.C. Cir. 2015); *cf. Flowers v. I.R.S.*, 307 F. Supp. 2d 60, 71 (D.D.C. 2004).

## **COUNT TWO**

### **(Failure to Respond to Request within Statutory Timeframe)**

58.   Neese re-alleges and incorporates by reference the allegations made in all preceding paragraphs of this Complaint.

59.   DOJ and its components have failed to respond to Neese's FOIA and Privacy Act requests within the statutorily mandated timeframe, in violation of Neese's rights under FOIA, including but not limited to 5 U.S.C. §§ 552(a)(6)(A)(i) and 6(B).   DOJ also effectively failed to make available the OPR FOIA Public Liaison to assist in Neese's requests to justify extending the statutorily-mandated timeline.   *Id*.   5 U.S.C. § 552(a)(6)(B)(ii).

60.   Due to DOJ's misconduct, unless enjoined and made subject to a declaration of Neese's legal rights by this Court, DOJ will continue to willfully and intentionally withhold the responsive materials and will continue to violate Neese's rights to receive the responsive records under FOIA. Neese is entitled to injunctive relief with respect to the release and disclosure of the requested materials.

## COUNT THREE

### (Failure to Comply with the Privacy Act:  5 U.S.C. § 552a(g)(1)(C)-(D))

61.  Neese re-alleges and incorporates by reference the allegations made in all preceding paragraphs of this Complaint.

62.  According to the Privacy Act, Neese has a statutory right to have access to and to receive any records maintained by DOJ and its components in a system of records which pertain to Neese.  5 U.S.C. §§ 552a(d)(1) and (e).  DOJ and its components violated Neese's rights by unlawfully failing to comply with the Privacy Act and this failure to comply has adversely affected Neese.  5 U.S.C. § 552a(g)(1)(D).

63.  Due to DOJ's misconduct by not complying with the Privacy Act, unless enjoined and made subject to a declaration of Neese's legal rights by this Court, DOJ will continue to willfully and intentionally withhold the responsive materials pertaining to Neese and will continue to violate Neese's rights to receive responsive records in accordance with the Privacy Act.  Neese is entitled to injunctive relief with respect to the release and disclosure of the requested materials and she is entitled to other such statutorily created relief as described below.

## PRAYER FOR RELIEF

Wherefore, Neese prays that this Court:

1.   Order DOJ to conduct reasonable searches to locate all records responsive to Neese's FOIA and Privacy Act requests by a date certain as determined by the Court.

2.   Declare that DOJ's failure to make a timely determination regarding Neese's FOIA and Privacy Act requests, as alleged in this Complaint, is willful and intentional, and is unlawful pursuant to 5 U.S.C. § 552(a)(6)(A)(i) and 6(B), and pursuant to the Privacy Act, 5 U.S.C. § 552a(g)(1)(C) and/or (D).

3.   Declare that DOJ's failure to search for and disclose to Neese all records that are responsive to Neese's FOIA and Privacy Act requests, as alleged in this Complaint, is unlawful pursuant to 5 U.S.C. § 552(a)(3) and 5 U.S.C. § 552a(g)(1)(C) and/or (D).

4.   Provide Neese with the opportunity to serve written discovery to DOJ and its components and to take necessary depositions during the discovery phase of this matter because, upon information and belief, the components are willfully and intentionally withholding pertinent information pertaining to Neese, which she knows exist, to which she is entitled to receive in compliance with the law.

5.   Award Neese actual damages to which she is entitled under the Privacy Act, pursuant to 5 U.S.C. § 552a(g)(4)(A).

6.   Award Neese her reasonable litigation costs and attorney fees pursuant to FOIA as set forth under 5 U.S.C. § 552(a)(4)(E), and in accordance with the Privacy Act under 5 U.S.C. § 552a(g)(4)(B).

7.   For the foregoing reasons, Neese asks that DOJ be required to answer expeditiously as

good cause has been shown given the importance of the requested material to Neese, given the numbers of times this material has been requested without a sufficient response, and given the amount of time that has passed and the number of DOJ components who have failed to respond.

8.   Grant such other relief as the Court may deem just, reasonable, and proper.


Respectfully submitted,


*/s/ David G. Barger*
DAVID G. BARGER
Virginia Bar No. 21652
D.C. Bar No. 469095
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
bargerd@gtlaw.com

*Counsel for Plaintiff*