# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ASHLEY BROOKE NEESE,

*Plaintiff*,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

*Defendant*.

Civil Action No. 19-1098 (CJN)

## PLAINTIFF'S REPLY AND OPPOSITION TO THE DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT ............................................................................................................3

    A    THERE REMAIN GENUINE ISSUES OF MATERIAL FACT WITH
         RESPECT TO THE SEARCH CONDUCTED BY OPR. ...................................3

    B    OPR IS NOT REQUIRED TO REFER RECORDS IN OPR'S SYSTEM
         OF RECORDS TO AN ALLEGED ORIGINATING COMPONENT FOR
         PRODUCTION UNDER THE PRIVACY ACT OR FOIA...................................6

    C    OPR'S INVOCATION OF EXEMPTIONS FROM AND UNDER THE
         PRIVACY ACT ARE WITHOUT MERIT ...........................................................7

         i    The Privacy Act .........................................................................................7

         ii   By Default, OPR has now conceded its reliance on exemption
             (d)(5) of the Privacy Act, throughout the course of productions,
             was without merit which thus Creates a Genuine Issue of Material
             Fact and of Law .........................................................................................8

         iii  OPR's Assertion of Exemption (k)(2) of the Privacy Act is
             Without Merit.............................................................................................9

    D    IF RECORDS ARE PRODUCIBLE UNDER THE PRIVACY ACT,
         FOIA EXEMPTIONS DO NOT PERMIT OPR OR THE FBI TO
         WITHHOLD RECORDS FROM PLAINTIFF NEESE......................................20

         i    The Freedom of Information Act..............................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Treasury*,
    No. 76-1404, slip op. (D.D.C. July 19, 1977) ...................................................................17

*Bartko v. DOJ*,
    *898 F.3d 51 (D.C. Cir. 2018)* ...............................................................12, 14, 18, 19

*Campbell v. Department of Justice*,
    164 F.3d 20 (D.C. Cir. 1998) ...................................................................................18

*Jefferson v. DOJ*,
    284 F.3d 172 (D.C. Cir. 2002) ...................................................................14, 18, 19

*Kimberlin v. DOJ*,
    139 F.3d 944 (D.C. Cir. 1998) ...........................................................................17, 22

*Pratt v. Webster*,
    673 F.2d 408 (D.C. Cir. 1982) ...................................................................................18

*Rural Housing Alliance v. Dep't of Agric.*,
    498 F.2d 72 (D.C. Cir. 1974) ...........................................................................15, 16, 22

*Stern v. FBI*,
    737 F.2d 84 (1984) ...................................................................................................17

*Strang v. U.S. Arms Control & Disarmament Agency*,
    864 F.2d 859 (D.C. Cir. 1989) ...................................................................................14

**Statutes**

5 U.S.C. § 552(b) ...................................................................................................................21

5 U.S.C. § 552a(k)(2) .............................................................................................................12

5 U.S.C. § 552a(t)(1) ..............................................................................................................20

**Other Authorities**

28 C.F.R. § 0.39a(a)(1) ...........................................................................................................19

28 C.F.R. § 16.4 ..................................................................................................................6, 7

28 C.F.R. § 16.80(a)(1) ............................................................................................................9

28 C.F.R. § 16.81 ....................................................................................................................7

https://www.americanbar.org/groups/professional_responsibility/publications/mo
    del_rules_of_professional_conduct/model_rules_of_professional_conduct_pre
    amble_scope/ ..........................................................................................................13

https://www.vsb.org/site/regulation/lawyer-discipline; *Ex. 4* ...............................................13

Virginia Administrative Code Title 15 ..........................................................................13

## I.      <u>INTRODUCTION</u>

Plaintiff Ashley B. Neese ("Plaintiff Neese," "Plaintiff," or "Ms. Neese"), through counsel, files this Reply in Opposition to Defendant's ("DOJ") Reply in Support of its Motion for Partial Summary Judgment (ECF 44). The Court granted Plaintiff's consent motion to file her Reply by May 19, 2021 (Minute Order May 10, 2021). Plaintiff's Reply is thus timely.

Only well after filing this lawsuit did the Office of Professional Responsibility ("OPR") and the Federal Bureau of Investigation ("FBI") start searching for and producing limited materials to Plaintiff Neese pursuant to her FOIA and Privacy Act requests.  However, neither OPR nor the FBI have produced one single record under the Privacy Act, contending various exemptions apply, to which Plaintiff vigorously disagrees. From a strategic standpoint, the components' position is significant. Given that the Privacy Act allows Plaintiff Neese greater access to records maintained in DOJ components' systems of records about her, the components' resistance to application of the Privacy Act shields (incorrectly) much of the information about Ms. Neese.

The most important issue for the Court to decide at this time is whether OPR and/or the FBI have a legitimate basis to withhold records from Plaintiff Neese under the Privacy Act. Although DOJ spends much of its reply arguing that the Privacy Act exempts from production records compiled for law enforcement purposes, see, e.g. ECF 44 at 7-10, <u>that exemption is irrelevant in this case</u>.   And, respectfully, OPR knows it is irrelevant. Plaintiff Neese is unquestionably entitled to records pertaining to herself maintained in OPR's system of records. As will be discussed below, it is indisputable that Plaintiff Neese was not investigated by OPR for **<u>any</u>** potential violation of law, as OPR's investigation was solely administrative and only for the purpose of determining whether she violated certain ethical duties.   The only outcome of which

could have been a potential state bar referral – which is not a civil sanction, despite OPR's claims. OPR thus was not performing a law enforcement function and cannot show that exemptions 552a(k)(2) or (j)(2) apply in this case. If Plaintiff is correct, which she submits she is, then OPR's and the FBI's searches and productions are not complete and there thus remain genuine issues of material facts and genuine legal issues in this case, and DOJ's Motion for Partial Summary Judgement should be denied.

The Defendant's Motion for Partial Summary Judgment may also have to be denied as premature for another reason. Significantly, on May 13, 2021, the Executive Office for United States Attorneys ("EOUSA") made a production of 86 pages pursuant to Plaintiff Neese's FOIA and Privacy Act requests (one cannot tell from the cover letter if any were produced under the Privacy Act and Neese has asked for clarification of that and other matters). EOUSA indicated that 42 pages of records it reviewed "require referral to other federal agencies."  Based on this ambiguous language, Plaintiff Neese requested an explanation.  Plaintiff understands that those 42 pages were referred to the FBI for review and processing.[1] DOJ/EOUSA has not informed Plaintiff Neese of the nature of those referred pages.  Moreover, since EOUSA continues to review and process records and materials, it is unclear whether additional referrals to "other federal agencies" will be made.  Because EOUSA's most recent disclosure included 42 pages of materials referred to the FBI, the FBI's Motion for Partial Summary Judgment appears to be premature.  Further, since EOUSA has yet to complete its review and processing of records,  OPR's motion may also be premature. A definitive answer from EOUSA now seems necessary before Defendants can move for partial summary judgment.

---

[1] Previously, the FBI reviewed and processed seven (7) pages of materials and one Blu-Ray disc containing multi-media. *Barger Decl., Doc. 37-1, Ex. 24*.

## II.   <u>ARGUMENT</u>

**A    THERE REMAIN GENUINE ISSUES OF MATERIAL FACT WITH RESPECT TO THE SEARCH CONDUCTED BY OPR.**

OPR continues to claim it has conducted an adequate search for records responsive to Plaintiff's request.  Plaintiff reasserts and incorporates her initial positions with respect to this issue as set forth in her Response in Opposition (ECF 37).  Plaintiff also submits the following in support of her position.

OPR admittedly did not conduct its initial search for records responsive to Plaintiff Neese's request until July 25, 2019, more than one year following Plaintiff Neese's submission of her FOIA and Privacy Act request, and three months following the filing of the present lawsuit.  *ECF 24, Joint Status Report, May 29, 2020, p. 4; McCarty 2d Decl. at ¶ 7.*

As Plaintiff previously set forth, Plaintiff Neese is aware of numerous documents, including a May 3, 2018 transcript of an interview conducted by Paul Beers of Emily Clark, which OPR maintains as part of its system of records, that has yet to be produced.[2]

Neese respectfully disagrees that DOJ's and OPR's search was adequate.  Particularly concerning in DOJ's Reply and Ms. McCarty's declaration is the reference that the only search terms included were: "Neese," "Beers," "McConaughy," and "Kozlowski."  *DOJ Reply, ECF 44-1, at 3; McCarty 2d Decl. at ¶ 11.*  Since the complainant in this case is Emily Clark, which is a matter of public record (as DOJ has released her name multiple times in filings, and in productions, among other releases of her name), OPR's search is not adequate because OPR

---

[2] OPR asserts that it sent the transcript back to the originating agency for production.  Since the document is a pre-existing document created by a private individual, the document did not "originate" with any other DOJ component but with a private individual.  Thus, if the search located this record, and it pertains to Plaintiff Neese, which we have reason to believe it does, at least in part, OPR must be required to produce this record in accordance with FOIA and the Privacy Act.

admittedly did not search for records pertaining to Ms. Neese by using Ms. Clark's name, or portions thereof, as a search term.  That failure is obvious and basic.  Thus, there remain genuine issues of material facts regarding OPR's search, and summary judgment is not appropriate.

Second, in Ms. McCarty's second declaration, she admits that on a number of occasions OPR inaccurately made statements that it had completed its review and processing of records and information pertaining to Ms. Neese's Privacy Act and FOIA request.  McCarty 2d Decl. at ¶ 4-13.  ECF 44-1.  OPR only found additional records after Ms. Neese pointed out the deficiencies in OPR's search and processing.  Further, Ms. McCarty submits that in the May 29, 2020 Joint Status Report filed with the Court, OPR stated that "it was voluntarily expanding its search to include all records that originated between July 20, 2018, the date of Plaintiff's request, and July 25, 2019, the date of OPR's initial search for records."  McCarty 2d Decl. at ¶ 7.  ECF 44-1.  Plaintiff Neese takes issue with this statement because in OPR's prior productions of November 8, 2019, February 6, 2020, and March 6, 2020, OPR had already released (at least in part) numerous materials dated after July 20, 2018.  Thus, OPR had already searched for records and materials post-dated July 20, 2018.  Plaintiff Neese's continual effort to point out missteps in OPR's search, after OPR had already started releasing information dated after July 20, 2018, raises legitimate questions about whether OPR has made a good faith effort.  Without Plaintiff Neese pointing out the errors to OPR, OPR would have unjustifiably withheld materials from Plaintiff Neese.

Third, OPR  failed to describe any search that was conducted with respect to the records maintained by either Lyn Hardy or Ginae Barnett, either physically or electronically.[3]  In her

---

[3] In Ms. McCarty's Second Declaration,  Ms. McCarty affirms that Ms. Ginae Barnett, the OPR FOIA Liaison, was being supervised by Lyn Hardy, the OPR Special Counsel, assigned to handle Plaintiff Neese's FOIA and Privacy Act requests.  Thus, the FOIA Liaison, who was

Second Declaration, Ms. McCarty states that "OPR only conducted searches of the records possessed by OPR staff who had some involvement in OPR's investigation of Ashley Neese, the subject of each of Plaintiff's requests.  Ms. Hardy's and Ms. Barnett's only involvement was in receiving and acknowledging Plaintiff's Privacy Act and FOIA requests[.]"  *McCarty 2d Decl. at ¶ 12*.  ECF 44-1. This statement is inaccurate as Ms. Hardy was clearly involved, at least to an extent, in matters pertaining to OPR's investigation, as of September 13, 2018.  *See Exhibit 6 of Barger's First Decl., Doc. 37-1, p. 56, email chain dated September 13, 2018*.  In that email, even though many portions are improperly redacted and should be produced under the Privacy Act, is the subject line states, "OPR Report Question re OPR ROI on Former AUSA Ashley Neese, W.D. VA."  The subject line alone shows the email is about OPR's investigation. Moreover, not only is Lyn Hardy copied on the email, but she also engages in the conversation by replying on September 13, 2018 at 9:34 a.m.  Therefore, OPR's claim that Ms. Hardy was not involved in OPR's administrative investigation does not appear to be correct.  Thus, a search (at least) using Ms. Hardy's name remains outstanding.

With Plaintiff Neese previously pointing out multiple issues with OPR's search after OPR had made representations that it had completed its processing and given that OPR admitted that it failed to use any search term related to Emily Clark's name for records and information pertaining to Plaintiff Neese as part of her FOIA and Privacy Act requests, there remain  genuine issues of material fact and law outstanding with respect to whether OPR conducted a search reasonably calculated to locate all responsive records.

---

supposed to help requestees in the event the OPR Special Counsel was not complying with the law, was being supervised by that same person (Ms. Hardy) who was not only failing to comply with the law, but also, coordinating efforts with the OPR attorneys assigned to handle the OPR investigation.

**B      OPR IS NOT REQUIRED TO REFER RECORDS IN OPR'S SYSTEM OF RECORDS TO AN ALLEGED ORIGINATING COMPONENT FOR PRODUCTION UNDER THE PRIVACY ACT OR FOIA**

There remains in dispute whether OPR's referrals to the FBI and EOUSA are legitimate or rather, a way to avoid producing records in OPR's system of records.  Plaintiff Neese reasserts and incorporates and relies upon her position in her Response in Opposition. She remains unaware of any statutory authority, caselaw, or Department Regulation that <u>requires</u> OPR to send records maintained in OPR's system of records pertaining to Plaintiff Neese to any other component for review and production.

If Plaintiff is correct that OPR cannot avoid review and production of records in its system of records under the Privacy Act, then there remains in dispute a material issue of fact because OPR has not completed its review and production of records under the Privacy Act.

Throughout the litigation, OPR has claimed that it must send records OPR possesses and maintains to the FBI and EOUSA/USAO-WDVA for review and production, as they are "originating" components.  That assertion is not correct.  OPR solely relies upon 28 C.F.R. § 16.4, which is a regulation that only applies to FOIA.  OPR, however, does not acknowledge that the CFR provision does not apply to the Privacy Act.   Because Plaintiff Neese has also made a request for records pertaining to her pursuant to the Privacy Act, OPR's position that Section 16.4 is controlling Department policy with regard to all of the records OPR possesses is without merit.

Such an approach allows OPR, (and the other DOJ components) for example, to continue to attempt to avoid production of a May 3, 2018 transcript of an interview conducted by Paul Beers of the complainant, Emily Clark.  This transcript was created by a third party, not the government, and is a pre-existing document; thus it did not originate with any DOJ component, despite OPR's contention.  This transcript is within OPR's system of records.  OPR and EOUSA/USAO-WDVA, however, are attempting to avoid production of this record, by claiming OPR must refer the record

to the EOUSA/USAO-WDVA for production.[4]  Thus, Plaintiff Neese is entitled to this transcript, and other records, as there is no legitimate exemption upon which OPR can rely to alleviate OPR's duty to produce.

Given that the Department Regulation upon which OPR attempts to rely upon does not even apply to the Privacy Act, and that OPR is not required to refer records for processing under the statutes governing FOIA and/or the Privacy Act, OPR has failed to meet its burden to show that it had to refer the records it maintained in its own system of records to other DOJ components for review and processing.  OPR should now be required to review and produce all non-exempt records under the Privacy Act and under FOIA to Plaintiff Neese which are maintained in OPR's system of records without any referrals, as consultation is the method discussed under the statute.  Summary judgment is not appropriate at this time.

**C      OPR'S INVOCATION OF EXEMPTIONS FROM AND UNDER THE PRIVACY ACT ARE WITHOUT MERIT**

**i       The Privacy Act**

Plaintiff Neese adopts and incorporates her Response to DOJ's Motion for Partial Summary Judgement. (ECF 37).

The most important issue presently before the Court is whether OPR is correct in claiming that it does not have to produce a single record in its System of Records pertaining to Plaintiff Neese under the Privacy Act.  The answer is **no**: OPR does not have a sufficient legal basis to

---

[4] Although this transcript should have been in Plaintiff Neese's personnel file in the USAO-WDVA, apparently it was not maintained there, as an employee of the USAO-WDVA represented to Plaintiff's counsel during a telephone conversation in February 2020 that all records in Plaintiff Neese's personnel file had been produced to Plaintiff Neese.  EOUSA is now erroneously attempting to withhold production of the May 3, 2018 transcript, and other records that should have been placed in Plaintiff Neese's personnel file, which clearly pertain to Plaintiff Neese, by asserting that EOUSA does not have to produce the record pursuant to 28 C.F.R. § 16.81.

withhold requested records from Plaintiff Neese under the Privacy Act, as Defendant's claimed exemptions do not apply and do not save OPR from producing records pursuant to the Privacy Act.  One previously claimed exemption by OPR has now been conceded by default (552a(d)(5)), as DOJ/OPR fails to even address the issue with the Court, even though OPR relied upon that exemption multiple times during processing.  OPR also has no legal or factual basis upon which to rely in its claims that all records in OPR's System of Records were compiled for law enforcement purposes.  The evidence clearly shows that OPR did not compile materials in its administrative inquiry and investigation for <u>any</u> law enforcement purpose – no violation of law was investigated by OPR.  Other than to make conclusory statements, OPR does not (and cannot) articulate an alleged violation of law that it investigated.  Thus, OPR should now be compelled to comply with the law and produce records in accordance with the Privacy Act.  Consequently, there remain material issues of fact and law regarding the records which OPR must produce to Plaintiff Neese in this case.

      **ii      By Default, OPR Has Now Conceded Its Reliance On Exemption (d)(5) Of The Privacy Act, Throughout The Course Of Productions, Was Without Merit Which Thus Creates a Genuine Issue of Material Fact and Law**

Throughout the course of this litigation, OPR has attempted to claim that **<u>all</u>** records in its system of records were exempt from the Privacy Act pursuant to two exemptions – 552a(d)(5) and 552a(k)(2). *See Barger Decl., Exhibits 13, 16, 18, 22.*  ECF 37-1, pp. 84, 91, 99, 115. OPR has processed and produced  materials only under FOIA.  Defendant in its Supplemental Response has had the opportunity to address Plaintiff's argument that exemption 552a(d)(5) was inapplicable, and has failed to adequately address the matter before the Court, thus arguably conceding that exemption 552a(d)(5) does not apply.   Merely based on OPR's incorrect reliance on 552a(d)(5), there remains additional  <u>genuine issues of material fact</u>  with respect to OPR's repeated claims that no records are producible to Plaintiff Neese under the Privacy Act and OPR

must now review the documents it has withheld for production pursuant to a correct application of the Privacy Act. *See, Id., Barger Decl., Exhibits 13, 16, 18, 22.*

     **iii**       **OPR's Assertion of Exemption (k)(2) of the Privacy Act is Without Merit**

OPR has withheld all records pertaining to Plaintiff Neese under the Privacy Act pursuant to OPR's unsubstantiated reliance on exemption 552a(k)(2). In accordance with 28 C.F.R. § 16.80(a)(1), OPR's system of records is exempt if records sought were "complied for law enforcement purposes."[5] The exemption also requires production if the relevant individual would be "denied any right, privilege or benefit that he would be entitled by Federal law or for which he would otherwise be eligible…" unless there was a promise to keep the identity of a source confidential.

The confidential source exemption is not applicable here as the identities of the sources of information are known to Plaintiff Neese (and counsel), and have been set forth in public filings and in OPR's productions under FOIA. Further, the government has not invoked a confidential source exemption.

More significantly, OPR's invocation of the law enforcement exemption to refuse to produce records under the Privacy Act is simply not correct. The records OPR maintains in its system of records were not the product of any criminal or civil investigation of Ms. Neese. OPR did not conduct an investigation into any violation of law, as OPR attempts to argue. OPR's attorneys have even admitted in writing that OPR's investigation was purely administrative in nature, and only concerned alleged potential ethical violations. See Barger 2d Decl. at ¶ 9, Ex. 1, OPR letter from Suzanne Drouet received on September 12, 2018. OPR, however, argues that its investigation falls within the law enforcement exemption without any supporting

---

[5] Since no exemptions under the Privacy Act are applicable, 28 C.F.R. § 16.80(a)(1) is also not applicable. OPR's system of records is therefore not exempt from production.

documentation – rather, OPR solely relies upon conclusory statements by Ms. McCarty that are contrary to OPR's prior statements in writing to Plaintiff Neese. OPR's position is unsupported. By OPR's admission, its inquiry was an administrative inquiry for purposes of determining the propriety of a potential bar referral. That effort is not law enforcement related, as there was no violation of law investigated, and indeed, it is not a matter that could result in civil sanctions, despite  OPR's contention.

      This issue – whether exemption 552a(k)(2) applies - is the most critical issue presently before the Court given the volume of important records OPR maintains in its system of records and would have to produce to Plaintiff Neese under a correct application of the Privacy Act.

      OPR fails to provide subject attorneys of internal administrative investigations with any due process, unlike the FBI,[6] which is also a DOJ component.  OPR, however, only allows subject attorneys access to records and materials *if* OPR deems it appropriate, even if those records contain favorable and exculpatory material.[7]  *See*, *Exhibit 5 to the Reply*, *Barger 2d Decl.,Ex. 1, September 12, 2018 letter from OPR Counsel, Suzanne Drouet*.   Since OPR admitted that it does not have to provide subject attorneys with due process because the investigation was one of an administrative nature, OPR cannot now claim that Plaintiff Neese was investigated for some potential violation of law (she was not) and that there were potential civil sanctions (a potential referral to a state bar is not a civil sanction) that could be imposed upon Plaintiff Neese because inherently OPR would then have to provide to Plaintiff Neese due process, or at least certain civil discovery.  OPR cannot have it both ways.  DOJ's policies and procedures may allow OPR to

---

[6] *See Neese Decl. (ECF 37-2) at ¶ 40.*

[7] OPR's position that it only provides materials that OPR deems are appropriate shows a fundamental lack of due process, a lack of transparency, and a disregard for fair and unbiased investigations.  It is therefore ironic that OPR is the DOJ component tasked with conducting administrative investigations of attorneys who allegedly commit discovery violations.

unilaterally determine to deny subject attorneys with due process during administrative investigations; however, the law does not allow OPR to unilaterally decide what exemptions are applicable under the Privacy Act, as OPR is attempting to do herein.

Although OPR may be a mixed function agency, having both law enforcement and non-law enforcement functions, the evidence clearly shows in this case that OPR was acting in a non-law enforcement capacity. Importantly, in OPR's June 28, 2018 letter to Plaintiff Neese, OPR only stated that it was investigating potential violations of Plaintiff Neese's ethical obligations. Notably missing from that letter was any assertion that Plaintiff Neese was being investigated for an alleged violation of law. For OPR to now attempt to assert that the administrative investigation concerned a potential violation of law, after the FBI had clearly passed the matter off to OPR in early May 2018, is simply wrong. DOJ/OPR make this faulty argument in an attempt to avoid producing documents that may not be favorable to OPR, or other components.

Exemption (k)(2) allows agencies to withhold from disclosure certain "investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2)." 5 U.S.C. § 552a(k)(2). As DOJ and OPR concede, in order to properly claim this exemption, "[t]he material must [have been] compiled [by OPR] for some investigative 'law enforcement' purpose, such as a civil investigation or a criminal investigation by a nonprincipal function criminal law enforcement agency." ECF 44. OPR and DOJ, however, unsuccessfully attempt to argue that alleged violations of standards of conduct (duties) could lead to civil sanctions such as referral to state bar licensing authorities. DOJ Reply to Response in Opp., p. 10-11; McCarty 1st Decl. ¶ 37. DOJ/OPR has no support for this position other than conclusory statements made by Ms. McCarty, which are unsubstantiated by the record and inconsistent with guiding case law. *See e.g., Bartko v. DOJ, 898 F.3d 51 (D.C. Cir. 2018)*.

A referral to a state bar authority is not a civil sanction and OPR/DOJ cannot so claim. Paragraph number 20 in the Scope of the Rules of Professional Conduct as outlined in the Model Rules of Professional Conduct: Preamble & Scope of the American Bar Association states, "[v]iolation of a Rule *should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached*. . . The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. *They are not designed to be a basis for civil liability*. . . . The fact that a Rule is just a basis for a lawyer's self-assessment, or for sanctioning a lawyer under the *administration of a disciplinary authority*, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/model_rules_of_professional_conduct_preamble_scope/[9]. *See Ex. 2.* More specifically, in this matter, Title 15 of the Virginia Administrative Code sets forth in pertinent part, "[t]he Virginia State Bar acts as an administrative agency of the Supreme Court." *See Ex. 3,* 15 VAC 5 – Virginia State Bar. Since the Virginia State Bar is an administrative agency, it only conducts administrative inquiries and investigations, which can only result in limited administrative outcomes (not civil sanctions). The only possible outcomes by the Virginia State Bar include: (1) a Private Reprimand or Private Admonition for less serious rule violations; (2) a Public Reprimand for more serious rule violations; (3) Suspension of the lawyer's license to practice law for a period of up to five years, during which time the lawyer cannot practice; or (4)

---

[8] For reference, the Virginia State Bar's Preamble: A Lawyer's Responsibilities also sets forth the same information as stated by the American Bar Association. *See Ex. 1.*

[9] For reference, the Virginia State Bar's Preamble: A Lawyer's Responsibilities also sets forth the same information as stated by the American Bar Association.

revocation of the lawyer's license to practice law."  https://www.vsb.org/site/regulation/lawyer-discipline; *Ex. 4*.   The Virginia State Bar's Preamble specifically states that the Rules of Professional Conduct "are not designed to be a basis for civil liability."  Ex. 1.

DOJ/OPR erroneously argue that a mere referral to a state bar authority is a civil sanction. DOJ/OPR rely solely on Ms. McCarty's statement for this position as there simply is no supporting basis for it.  In fact, the bar authorities unequivocally set forth otherwise.  This meritless claim is a deficient attempt to create a civil sanction where there is none in order to attempt to avoid producing records Plaintiff Neese is entitled to under the Privacy Act.    OPR has not cited to any case law or legal authority which lawfully allows OPR to withhold records from Plaintiff Neese pursuant to 552a(k)(2).  The cases upon which DOJ/OPR relies actually support Plaintiff Neese's position.  Moreover, DOJ/OPR attempts to have this Court overlook the *Bartko* decision, which clearly found that  the D. C. Court of Appeals  has "previously 'decline[d] to hold as a matter of law that all OPR records are necessarily law enforcement records.' *Jefferson*, 284 F.3d at 178.  That is because one of OPR's primary responsibilities is to 'secure reports, as distinct from compiling them, that arise as a result of internal agency monitoring and review allegations of *non-law violations* by Department attorneys for internal disciplinary purposes." *Bartko v. DOJ*, 898 F.3d 51.  Critical to the analysis is that the allegations herein were allegations that were "non-law violations."  But, without any supporting facts, DOJ/OPR attempt to claim otherwise.

For instance, on page 9 of its Reply (Doc. 44), DOJ/OPR set forth that the "subsection (k)(2) exemption does not apply to routine background security investigation files, [it] does apply to investigations of employees suspected of illegal activity," and "material compiled for purposes of investigating agency employees for suspected violations of law can fall within subsection

(k)(2)."  In support of its position, DOJ/OPR cites to the DOJ Overview and *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 862 n.2 (D.C. Cir. 1989) (where an existing agency employee had allegedly violated national security regulations by improperly storing, transporting, and disclosing classified documents).  The DOJ Overview and the *Strang* case provide that employees would have to be investigated for "suspected illegal activity."  That was not the case here.  OPR only conducted an investigation into whether Plaintiff Neese violated any rules of professional conduct, as OPR set forth in its letter dated June 28, 2018, none of which contained any "suspected illegal activity."  OPR has not been able to articulate any "suspected illegal activity" and it cannot now attempt to do so.  All OPR claims, through a conclusory statement by Ms. McCarty, is that "[t]he OPR records that are responsive to Plaintiff's FOIA and PA request were all compiled for purposes of OPR's investigation into specific allegations that Plaintiff . . . *violated specific rules and standards of conduct*."  *McCarty Decl. #2 at 24*.  An allegation regarding a potential violation of standards of conduct is an allegation of a non-law violation.  Moreover, ignoring that state bar authorities act in an administrative capacity,  and do not impose any civil liability or civil sanctions upon those who violate the Rules of Professional Conduct, Ms. McCarty wrongly concludes, without any supporting authority, that "[t]hese allegations, if proven, could result in civil sanctions, including referral to Plaintiff's state bar licensing authority."  *Id*.  DOJ also stated, on page 10 of its Reply (Doc. 44), that "OPR's investigation of Plaintiff focused on specific, alleged illegal and improper acts[.]"  OPR's letter dated June 28, 2018, which informed Plaintiff Neese of what OPR was investigating, did not include any allegations of a criminal or civil nature. *Barger Decl. at 19 (Doc. 37-1)*.  Rather, the questions posed by OPR only pertained to alleged ethical violations.  *Id*.  For DOJ/OPR to now

allege otherwise to attempt to avoid production is not only disingenuous, but also, a lack of candor toward this Court.  The position is without merit.

DOJ/OPR also asserts that "OPR investigations such as the one at issue here involve civil and administrative law matters that clearly fall within OMB's (k)(2) definition of 'material compiled for law enforcement purposes.'"  OPR cites to *Rural Housing Alliance v. Dep't of Agric.*, 498 F.2d 72, 81 (D.C. Cir. 1974) in support of its position.  *Rural Housing Alliance* was a FOIA case in which exemption 7 of FOIA was discussed in detail.  Although the specific issue in this case pertains to the Privacy Act, the *Rural Housing Authority* case is useful to review – but, not for DOJ/OPR's position.   DOJ/OPR cited the case for the proposition that  "to qualify as records compiled for law enforcement purposes, the documents must arise out of 'investigations which focus directly on specifically alleged illegal acts . . . which could, if proved, result in civil or criminal sanctions.'"  Doc. 44, DOJ Reply, p. 10.  However, since there were no allegations of illegal acts, the outcome of an OPR investigation could not have resulted in civil or criminal sanctions.  The *Rural Housing Alliance* case also makes clear that "[t]he purpose of the 'investigatory files' is thus the critical factor. . . . If the purpose of the investigation was to consider an action equivalent to those which the Government brings against private parties, thus demonstrating that the 'law enforcement purpose' *was not customary surveillance of the performance of duties by government employees*, but an inquiry as to an identifiable possible violation of law, then such inquiry would have been 'for law enforcement purposes' whether the individual were a private citizen or a government employee."   498 F.2d at 82.  Although DOJ/OPR omits this portion of the opinion *, it clearly supports Plaintiff Neese's position that FOIA Exemption 7 cannot be claimed if an inquiry did not include a possible violation of law.  DOJ/OPR have not claimed (and cannot claim) that OPR's investigation involved any possible

violation of law.   Rather, OPR's letter made it clear that OPR was only conducting an administrative investigation pertaining to ethical duties and obligations.   *See Barger 1st Decl. (Doc. 37-1) at ¶ 19; see also, OPR production Nov. 8, 2019, bates-stamped 000281-000283.* OPR Counsel, Suzanne Drouet, also confirmed the matter was an administrative investigation where Plaintiff Neese did not have due process rights in a letter from September 12, 2018.   *See Ex. 1 of Barger 2d Decl*.   For DOJ/OPR to now conclusory claim that OPR's investigation pertained to specific, alleged illegal acts or a possible violation of law is simply not correct.[10]

DOJ/OPR also attempts to rely heavily upon *Kimberlin v. DOJ*, 139 F.3d 944 (D.C. Cir. 1998) in support of its position.   OPR's reliance on this case is misplaced as the OPR investigation in that case "was conducted in response to and focused upon *a specific, potentially illegal release* of information by a particular, identified official.   The investigation was intended to discover whether John Thar had *violated any law* by revealing to the press information concerning an investigation of the Vice-President, who was then running for re-election" *Kimberlin*, 139 F.3d at 947 (emphasis added).   That case did involve a FOIA  Exemption 7(C) issue.  The *Kimberlin* Court found, "an agency's investigation of its own employees is for 'law enforcement purposes' . . . if it focuses 'directly on specifically alleged illegal acts . . . which could, if proved, result in civil or criminal sanctions." *See id*. at 947.   DOJ/OPR, however, fail to acknowledge that in that same opinion, the *Kimberlin* Court found that Exemption 7(C) did not "exempt from disclosure, as we have previously had the occasion to note, 'internal agency investigations . . . in which an

---

[10] Plaintiff also relies upon the facts set forth in her Response (Doc. 37) and the supporting Declarations which show that OPR had already opened an administrative inquiry into Plaintiff Neese's conduct prior to the FBI conducting the initial interview of Emily Clark.  Thus, the FBI and OPR knew as of May 10, 2018, that Plaintiff Neese was not being investigated as to any alleged specific illegal activity.  DOJ cannot assert that OPR would have taken the lead in any criminal matter.

agency, acting as the employer, simply supervises its own employees." *Kimberlin*, 139 F.3d 944

(quoting *Stern v. FBI*, 737 F.2d 84, 89 (1984)).  As the *Stern* case set forth, "[m]aterial compiled

in the course of such internal agency monitoring does not come within Exemption 7(C) even

though it 'might reveal evidence that later could give rise to a law enforcement investigation.'"

*Id.*[11]  Thus, both the *Kimberlin* case and the *Stern* case are favorable to Plaintiff's position, as the

records in OPR's System of Records pertaining to Plaintiff Neese were not compiled for law

enforcement purposes.

Furthermore, DOJ/OPR ignores the significance of the *Bartko v. DOJ* opinion, as it

pertains to whether OPR investigations of alleged ethical violations allow OPR to qualify as

protected law enforcement records.  *See Bartko*, 898 F.3d 51.  DOJ/OPR has cited to *Jefferson v.

DOJ*, 284 F.3d 172 (D.C. Cir. 2002) as guiding precedent.  But, DOJ/OPR did not discuss the

entirety of the *Jefferson* opinion – only the portion that DOJ/OPR believes is useful to its position.

In that case, the *Jefferson* Court found, "if the investigation is for a possible violation of law, then

the inquiry is for law enforcement purposes, as distinct from customary surveillance of the

performance of duties by government employees."  The *Jefferson* Court cited *Pratt v. Webster*,

673 F.2d 408 (D.C. Cir. 1982), where that Court set forth a two-part test whereby the government

can show that its records are law enforcement records if: the investigatory activity that gave rise

to the documents is 'related to the enforcement of federal laws,' and there is a rational nexus

between the investigation at issue and the agency's law enforcement duties."  *See Jefferson*, 284

---

[11] Moreover, as previously set forth in Plaintiff's Response (Doc. 37), Plaintiff relies upon *Anderson v. Treasury*, No. 76-1404, slip op. at 9-11 (D.D.C. July 19, 1977), where the Court found subsection (k)(2) of the Privacy Act inapplicable to an investigatory report regarding alleged wrongdoing by an IRS agent where the investigation was closed and no possibility of any future law enforcement proceedings existed.  Even though the *Anderson* case appears to be valuable, and Plaintiff cited to this case in her Response, DOJ does not appear to have acknowledged the value of the *Anderson* case with respect to Plaintiff's Privacy Act request.

F.3d at 177 (*citing Pratt*, 673 F.2d at 420, 421).   The *Pratt* case shows that the documents must be related to the enforcement of federal laws and a rational nexus must exist between the investigation and the agency's law enforcement duties for agencies to claim records are law enforcement records.   DOJ/OPR cannot show that Plaintiff Neese was investigated for any other purpose than for OPR to determine if she purportedly violated any ethical duty – so its reliance on *Jefferson* (and therein *Pratt*) is not helpful to DOJ/OPR's position.

Moreover, the *Bartko* Court stated, "[b]ecause OPR does not 'specialize[] in law enforcement, its attempt to shield its records under Exemption 7(C) merits no deference. *Campbell v. Department of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998).   We have previously 'decline[d] to hold as a matter of law that all OPR records are necessarily law enforcement records.' *Jefferson*, 284 F.3d at 178.   That is because one of OPR's primary responsibilities is to 'secure reports, as distinct from compiling them, that arise as a result of internal agency monitoring and review allegations of *non-law violations* by Department attorneys for internal disciplinary purposes.' *Id*. (emphasis added)."   *Bartko*, 898 F.3d 51.   The *Bartko* Court further stated  that the government had "not come close to showing that all records (if there are more) involving misconduct allegations against Wheeler would have been compiled for law enforcement purposes."   *Id*.   Even further, the Court found that OPR was "not even in the ballpark" with some of its claims, and stated that "OPR's mission today (and during the time period covered by Bartko's FOIA requests) have narrowed to focus primarily on internal disciplinary matters [rather than OPR's prior actual law-enforcement function of reviewing charges that a Justice Department Attorney may have been in violation of the law]."   The Court found that "Justice Department regulations provide that OPR shall 'receive, review investigate and refer for appropriate action allegations of misconduct involving Department attorneys ***.'

28 C.F.R. § 0.39a(a)(1). (2006).  Absent from that assignment is any reference to the investigation of criminal wrongdoing or violations of law.  That marks a sharp shift in OPR's responsibilities[.]"  *Id.*  Without question, OPR's responsibilities of conducting investigations regarding duties of an employee, which if any violation were founded would mean OPR could potentially refer ethical violations to state bar authorities, without any other purpose, is "not even in the ballpark" to allow an assertion that OPR's function specifically with respect to Plaintiff Neese were law enforcement related.  That contention lacks merit and OPR's reliance upon exemption 552a (k) (2) is without merit.  Consequently, OPR should be required to reproduce any withheld records under the Privacy Act as no exemptions are applicable.

Complying with rules of professional conduct are ethical duties imposed upon attorneys, including DOJ attorneys.  The *Bartko* decision is consistent with the Preamble to the American Bar Association and the Preamble to the Virginia State Bar - violations of ethical duties do not equate to possible violations of law.  In this matter, the facts clearly show that OPR did not compile any records sought by Plaintiff Neese in OPR's System of Records for any law enforcement purpose.  Exemption (k)(2) is therefore inapplicable and DOJ/OPR's position is meritless.  DOJ and OPR even admit in their filings that the OPR investigation only could have resulted in a "referral to a state bar licensing authority." Since OPR conducted an administrative investigation that did not involve a potential violation of law, DOJ cannot now assert  that there was any law enforcement purpose.  OPR has failed to meet its burden to show that exemption (k)(2) is applicable, and thus, summary judgment is not appropriate, as genuine issues of law and fact remain, and this Court should compel OPR to reprocess its records in compliance with the Privacy Act.

Plaintiff Neese further reasserts her position that OPR wrongly claimed the use of

Exemption (j)(2).  OPR should not be allowed to withhold records in its system of records received from the FBI wherein OPR compiled those records as part of its administrative investigation regarding Plaintiff Neese.     See ECF 37 at pp. 27-32.

**D    IF RECORDS ARE PRODUCIBLE UNDER THE PRIVACY ACT, FOIA EXEMPTIONS DO NOT PERMIT OPR OR THE FBI TO WITHHOLD RECORDS FROM PLAINTIFF NEESE**

Pursuant to the Privacy Act, "[n]o agency shall rely on any exemption contained in section 552 of [Title 5] to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section." 5 U.S.C. § 552a(t)(1).  Since OPR's system of records is not exempt from production under the Privacy Act as it pertains to Plaintiff Neese, as OPR has no valid argument that its administrative investigation involved a violation of law, Plaintiff Neese is entitled to all records in OPR's system of records regardless of any FOIA exemption that may be applicable.  OPR's failure to timely comply with the law, search for records, and produce records, along with OPR's improper attempt to withhold records from Plaintiff Neese, calls into question the legitimacy of OPR's arguments as a whole in this matter.

**i    The Freedom of Information Act**

Due to page limitations and in an attempt to avoid duplication of the arguments, Plaintiff Neese reasserts and incorporates by reference her arguments pursuant to FOIA from her Response in Opposition.  ECF *37, pp. 37-49*.

The goal of FOIA is to ensure government accountability and transparency.  Although there are exemptions under the FOIA statute, even when an exemption applies, the agency is obligated to disclose "[a]ny reasonably segregable portion of a record" after removing the exempt material.  5 U.S.C. § 552(b).  Moreover, all individuals are to be treated the same under FOIA – but DOJ wants to treat Plaintiff Neese differently than Emily Clark, Emily Clark's family members, and others.

Both OPR and the FBI have already conceded that this matter is one of public interest based on the productions made by each component to date, as neither DOJ component have released one single record to Plaintiff Neese pursuant to the Privacy Act.  Thus, regardless of OPR's claims at this time that the release has only been made to Plaintiff Neese, the materials have been released in accordance with FOIA, and are thus able to be retrieved by any individual seeking publicly releasable information – including personal information related to Plaintiff Neese, Emily Clark and others, and purported text messages between Emily Clark and Plaintiff Neese, among other information.[12]

As previously discussed, the records compiled by the FBI and OPR, pertaining to Plaintiff Neese, were not compiled for any law enforcement purpose.

DOJ's reliance on the *Kimberlin* case to avoid production of records is misplaced.  The *Kimberlin* case involved an investigation as to whether John Thar "had violated any law[.]"   In that case, DOJ and the Court articulated alleged illegal activity that OPR investigated and distinguished it from the type of investigation discussed in the *Rural Housing Authority* case ("the investigation [in Kimberlin] was not aiming generally, as was the investigation in *Rural Housing* for example, 'to insure that [the agency's] employees are acting in accordance with statutory mandate and the agency's own regulations.'" *Kimberlin*, 139 F.3d at 947 (*quoting Rural Housing Authority*, 498 F.2d at 81).  DOJ/OPR's effort to rely upon the *Kimberlin* case is unjustified, as DOJ/OPR cannot articulate any specific violation of law that OPR allegedly investigated with

---

[12] On page 18 of DOJ's Reply (Doc. 44), DOJ claims is has not asserted Exemption 7(C) to protect the privacy interests of Plaintiff Neese – thus, showing that Plaintiff Neese has not been treated equally under FOIA.  Moreover, OPR already released Emily Clark's telephone number, email address, purported private communications – including information about family members and other private individuals, including Plaintiff's husband – under FOIA; thus, the information is now releasable to the public at large if anyone else requests it.

respect to Plaintiff Neese.  Rather, OPR only investigated alleged violations of ethical duties (non-law violations) for potential referral to state bar authorities.[13]  Moreover, a potential referral to a bar authority is not a civil sanction, and DOJ/OPR cannot point to any authority stating otherwise.  The American Bar Association and the Virginia State Bar make it clear that their functions are of an administrative nature, and the rules of professional conduct are not designed to be a basis for civil liability.  Therefore, contrary to DOJ's argument, the *Bartko* case is directly on point regarding this issue – the facts in *Kimberlin* are clearly distinguishable.

The FBI was not conducting a criminal investigation with respect to Plaintiff Neese, as the FBI's initial interview of Emily Clark was on May 11, 2018.  Prior to that date, the evidence shows that Plaintiff Neese had already been informed she could return to work at the USAO-WDVA and OPR had already opened an administrative investigation.  Moreover, OPR conducted an administrative investigation regarding Plaintiff Neese with respect to potential ethical violations, not with respect to any criminal or civil law violations.  Thus, no records pertaining to Plaintiff Neese were compiled for law enforcement purposes, as OPR and the FBI attempt to claim, and the FBI's report and other materials were compiled by OPR (and are maintained in OPR's system of records) as part of OPR's purely administrative investigation.

## CONCLUSION

As set forth in Plaintiff's Response in Opposition to the Partial Summary Judgment Motion, including the exhibits, Statement of Disputed Material Facts, the Opposition to the

---

[13] OPR released Plaintiff Neese's private, confidential letter from OPR dated June 28, 2018 in accordance with FOIA, in this case.  The letter sets forth the alleged violations of the Virginia Rules of Professional Conduct in which OPR intended to investigate – none of which involved alleged violations of law, as DOJ/OPR would now like to argue in an ill attempt to avoid production.  Plaintiff Neese asserts that this Court may want to review the confidential letter *in camera* to prove that OPR's investigation did not involve a violation of law for which civil or criminal sanctions may be imposed.

Defendant's alleged undisputed facts, and the Declarations provided by Plaintiff Neese and Plaintiff's Counsel, and in this Reply, including all attachments and exhibits , Defendant's motion for partial summary judgment should be denied. The FBI and OPR should be compelled to reproduce records in compliance with the Privacy Act and FOIA. Further, EOUSA should confirm whether any additional documents have been referred to the FBI and OPR, or will be in the future, and, if so, whether those documents are not duplicates of any other records that OPR and the FBI have already reviewed.

Dated:  May 19, 2021                          Respectfully submitted,

                                              */S/  David G. Barger*
                                              DAVID G. BARGER, Virginia Bar #21652
                                              D.C. Bar #469095
                                              Greenberg Traurig, LLP
                                              1750 Tysons Boulevard, Suite 1000
                                              McLean, Virginia 22102
                                              Telephone: (703) 749-1300
                                              Facsimile: (703) 749-1301
                                              bargerd@gtlaw.com

                                              Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was served on counsel of record through the ecf system on May 19, 2021.

*/S/  David G. Barger*
DAVID G. BARGER, Virginia Bar #21652
D.C. Bar #469095
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1300
Facsimile: (703) 749-1301
bargerd@gtlaw.com

*Counsel for Defendant*

24